323-0272 Robert Stuckel and Scott Stuckel, appellees by David Smith v. Scott Rowe, appellant by James Griffin. Mr. Griffin, you may have your seat. Thank you, may it please the court. My name is Jim Griffin here on behalf of the appellant, Scott Rowe. This appeal involves the Illinois securities law. It's a statutory remedy. Private parties can seek relief under this statute under certain limited circumstances, and they need to meet certain criteria in order to be entitled to relief. If that statutory remedy is not available, a plaintiff has common law remedies available. In this case, the plaintiff had seven other remedies that were under the Illinois security law. The foremost requirement to be entitled to relief under the Illinois security law is that the dispute has to involve a security. And in this case, it does not involve a security. And this was an issue that was argued from the beginning of the case through today, that the note at issue, which was appended to the plaintiff's complaint and first amended complaint, is not a security as that term is defined under Illinois securities law. How about the maturity date, counsel, for when the project is completed or completion of project? Well, that just determines when the loan repayment is due. But under the case law, the date of repayment is really not been the controlling factor on whether it's a security or not. It's what is the party holding the security entitled to receive. In this case, it's interest. Interest only. And you have the Boatman's Bank versus Durham case, Dvorkin versus Soderquist, Illinois appellate court cases. You have a number of seven circuit cases, which Illinois courts have said are persuasive authority due to similarities in the securities law between federal and state. What about the motivation that his son would receive part of the property, part of the company, ultimate company? Well, that's not what's pled in the complaint. And that's not what Mr. Stuckel testified to at trial. What was pled in the complaint, paragraph 110 of the first amended complaint, is that the note, that's the note attached to the complaint, is a security. It doesn't say the note plus other considerations, plus other facts outside of the terms of that note was a security. It says the note is a security. And at trial, what Mr. Stuckel testified to was entirely consistent with the terms of the note. He said, I was not making an investment in this company. I was not a partner. I was not a joint venture. I was not going to be entitled to repayment only if the company succeeded. He testified he was making a loan just like a bank. That was a question he answered. And that's entirely consistent with the terms of this promissory note, that the repayment was not contingent or dependent in any way on the success or failure of the borrower, AC-1 Investments, not my client. And that is, under the case law, that is the key element. Are you entitled to profits? Well, is there ever a situation where the interest rate is so far afield from what a bank, for example, would charge that perhaps it is a function in part of profit? I guess I'm focusing on the second, when they rolled over, essentially, when it wasn't paid the first time, if you understand my question. Sure. Well, here the interest rate is 12%. So high, perhaps, from what you'd get on a bank loan. I would like 12%. But not, what's that? I would like 12%. But I don't think we're talking usury terms here. It's 12%. And certainly not uncommon in what I'd call a private loan arrangement. You're going to pay a higher rate, typically, than you would pay going to Chase Bank or First Third Bank. But in this case, again, there's nothing in the note itself that identifies this transaction as anything else but a straightforward lender-borrower relationship where the lender is getting interest at 12%. Are there cases that say that more significant, that you can go beyond what the paperwork says? And didn't Mr. Rowe, in his video where he was promoting the plan for investing in real estate, say that, using this property as an example, that Mr. Stuckel's son was to receive a part of the property? But that's not, there are cases that do say you look at the totality of the circumstances as the determination whether an instrument is a security. That is certainly true, Your Honor. But in this case, you also have to look at, that video was never seen by Mr. Stuckel. So it certainly didn't serve the basis of his understanding of the transaction. And when you look at his testimony at trial, his testimony is, I was making a loan and expected to be repaid 12% interest regardless of any other circumstance. And that's consistent with the terms of the note, and that's consistent with how the plaintiffs pled and pursued this case. They sued AC-1 for contract-seeking principal and interest for repayment of the loan. So the plaintiffs did not plead anything except the note attached to the complaint being a security. And that was consistent with Mr. Stuckel's testimony. So here, I don't think there are any other, you look at the totality of the circumstances, it's the note. It's what's attached to the complaint. That is the totality of the circumstances, because that's how plaintiffs pled the case and that's how Mr. Stuckel testified. Can you address the settlement agreement with AC-1 and what, if any, relevance that has in terms of your client's ability to recover? Yeah, I think that settlement affects a few different arguments that we've raised. Certainly, under the ISL, the only private remedy available is a rescission. And once Mr. Stuckel settled with AC-1 and released all claims, and in that, he represented that he had not previously assigned or transferred any of his rights under the promissory note, once that occurred, there would be no rescission, because essentially, at that point, that promissory note had terminated, its legal existence was terminated due to the settlement. There was certainly no rights for any other party to obtain that note through some transfer and then pursue an action against AC-1 that had been released. So that's one aspect of it. The other aspect that we've argued is the allegation here is that Mr. Rowe was acting as a salesperson for AC-1 and the settlement agreement released all agents of AC-1. And certainly, if Mr. Rowe was alleged, and that's how the matter was pursued, was alleged to have been, and if the jury believed he was a salesperson, then he fell within the scope of that release as being an agent of AC-1. Counsel, was that ever fled, and was a jury instruction ever tendered to that effect? There was no jury instruction tendered to that effect. We did argue for that in our motion for direct verdict at the close of the plaintiff's presentation of its evidence. No affirmative defense? There was no affirmative defense. The, I guess our second main argument, besides the fact that the note is not a security, is that the requirements, the notice requirements under 815 ILCS 513B were not satisfied. That requires that a party seeking rescission of a security that had been purchased provide written notice to the party they're seeking rescission, and that's by registered or certified mail return receipt request. Now, in this case, again, Mr. Stuckel admitted at trial that there was never any notice mailed out to Mr. Rowe or any other person. The lawsuit itself that would serve as notice, and it has been upheld to do so in other cases. That's the argument of the plaintiffs, yes, and that was upheld in the Norville versus Olden Big Top restaurant, where that appellate court decision said the complaint in that case under that circumstance could act as a substitute for the sending of the notice. But the court noted in that case, in Norville, that the complaint itself had the contained requirements of 513B. It stated that we are seeking rescission of this instrument, and that this has been brought within six months of learning that it was subject to being rescinded. In this particular case, the complaint, both the First Amendment complaint and the original complaint, do not contain any request for rescission, nor any similar terminology. Not only don't they use the magic word rescission, there's no other terms or language that are similar to rescission. And so we relied on the Endo versus Albertine case of the Northern District of Illinois decision, which involved the exact same circumstances as here, where the claimant under the ISL was claiming that the complaint was qualified as the notice under 513B, and relying on Norville. And the district court said, well, but your complaint in Endo didn't contain a request for rescission, nor any other language as required under 513B. And in that case, the court said, therefore, the complaint does not serve as a substitute for this written notice. And we believe the same holds true here. Was that pled, and was there a jury instruction tender with regards to the no notice? There was nothing pled by the plaintiff regarding notice under 513B. As far as the jury instruction, there was no jury instruction tender, though there was no dispute of fact relating to this notice. The plaintiff conceded no notice was sent out. And the only argument that the plaintiffs have made is that the complaint itself qualifies as a substitute for that. And certainly, that's a legal determination for the court to make, whether the complaint itself satisfied 513B. The jury would not be within the province of the jury to review the complaint and determine whether a statute has been satisfied. And, you know, let me add, you know, there were the plaintiff's response, at least the beginning of their brief, focused on failure to, you know, make jury instructions on some of these issues we're raising. But I want to point out, the Illinois Supreme Court in Van Dyck v. White stated, the determination of whether a financial instrument falls within the definition of a security under the Act is a matter of statutory construction which presents the question of law subject to de novo regime. So whether an instrument falls within being a security is clearly a matter for the courts to decide, not the jury. In addition, there really are no disputed facts relating to this note. The note was pled. We've not disputed the existence of the note or its terms. Additionally, we're relying on Mr. Stucol's testimony in our arguments. We're not contesting his testimony as to what his expectations were in making this loan. I think I've covered the substantive argument either in response to your questions or so the last argument we made was the attorney fee petition. There was an attorney fee petition that was awarded under the terms of the ISL. Of course, we believe that no cause of action should have been available here. But our argument was that under Bank of America versus WS Management, when a case involves some claims filed pursuant to statutes that allow attorney fees and others that do not, the fee petition has to distinguish between time spent on those claims for which there is a statutory fee petition available and those which are not. And in this case, the fee petition did not do that. The fee petition covered all eight counts against all 15 defendants. Counsel, weren't the same facts involved in all of the counts? Not in all of the counts, no. For example, the counts against Renatus that went to trial had to do with Renatus' control of Mr. Rowe. That was not a part of its claim against Mr. Rowe. It obviously didn't have to prove what Renatus' control was. So that's just one example. But there were others. The breach of contract against AC-1. There are some facts that are similar, but not all together. There were certainly different legal theories involving different facts. So that's why I think the rule exists which says you have to segregate these so that when a court's determining what the fee award is, there's some fairness to a defendant that doesn't have to pay attorney fees pursuing other claims based on other facts that are unrelated. Thank you. Justice Hedl. Mr. Griffin, you'll have an opportunity to rebuttal.  Thank you. Mr. Smith. Good morning, members of the panel. Good morning, counsel. My name is David Smith, and I represent Robert Stuple, the plaintiff appellant in this case. Members of the panel, the jury in this case found the plaintiff proved every element upon which the jury was instructed. And that is extremely important in this case for a few different reasons. The record reflects that prior to trial, parties were ordered to appear before the trial judge with jury instructions ready. We did that. Jury instructions were exchanged prior to trial. Obviously, then the trial commenced, and we ultimately did that. We had a jury instruction conference at the end of trial. What kind of instructions were supposed to be tendered if the court would not accept that this was not a security? Ignore the law? Understood, Judge. And with respect to a jury instruction specifically with the question on whether this note is a security, I would rely upon, and I recognize that Van Dyck stands for the proposition that the question of whether a instrument is a security is a legal question. I recognize that. However, I would also point out that in Boatman's Bank and other cases, as I believe Justice Albrecht mentioned earlier, there is a required analysis of the facts surrounding the transaction. And in Boatman's Bank, for example, the court engaged in a detailed analysis of what happened, what were the understandings of the parties, what was the relationship between the parties. And so those are facts that a fact finder ultimately needs to review and determine. Well, if I were just to look at Mr. Stuckel's testimony, and then look at the promissory note, I'm having a hard time concluding that this is anything other than a traditional loan. And I certainly recognize that. As I pointed out in the brief, Mr. Stuckel is an elderly at the time of the note was sold to him in his late 70s, close to 80, gentleman who was a retired carpenter. The only real estate transaction in which he had ever participated was the purchase of his house that he had lived in since the 60s. I would also point out that Mr. Stuckel did testify that he had a meeting with Mr. Rowe and the video where Mr. Rowe described in his own words how that discussion went was likewise put forth to the jury. Or in other words, and to the extent the members of the panel have not watched that video, I'd strongly urge you to do so. It's about 20 minutes. Mr. Rowe describes both how this transaction was supposed to go, what the relationships between the parties were, and he expressly states this is how the discussion went with funds that Scott Stuckel, who is now deceased, brought. Or in other words, robbed. And Mr. Rowe specifically states in that video that he explained to him that you're going to be investing this money, we're going to be purchasing a building for rehab, you know, all the things that we've, I'm not going to repeat what's in the brief, but all those things that we've pointed out. And the note on its face, and this is critical, states that it is due upon project completion. What project completion is, is not stated in the note. The way that we determine what project completion is, is by relying upon Mr. Rowe's statement as stated in the video that was provided to the jury. And I would likewise point out that on that note, the case of both Dvorkin, which was referenced by counsel, as well as U.S. Steele, stand for the proposition of, particularly U.S. Steele, which is cited in the brief of the Seventh Circuit case. But the Seventh Circuit specifically stated that when it determined that the noted issue in that case was not a security, first, there was a set maturity date, or what the court referred to as a short maturity date, which was three years. And the court in that case specifically stated payment of interest, showed that it was not a security because neither repayment of the loan or the rate of return was in any way dependent on actual profits or success. Here, the note on its face states that it is due upon project completion. What is project completion? I'm sorry, go ahead. But counsel, it doesn't in any way say that it's dependent on project completion or that there is any contingency associated with it. It's not dependent on the success of the project. In fact, Mr. Stuckel repeatedly testified that he repeatedly insisted that he needed a mortgage, and he kept asking for a mortgage. And a mortgage on the property, when you take out a mortgage on a property, you have put a lien on the property, and you expect that you will get, I mean, and the expectation is that you get back. There's no contingencies with the mortgage. And he was focused on getting a mortgage. Well, and that is true. I would also put forth to the panel that whether a security is secured by something else, in this case, a mortgage on the property, and whether it is, in fact, a security that contemplates success of the project, or in this case, success of Simple Investment Systems and AC-1, are two different things. Now, I guess Mr. Stuckel was under the impression that he was going to get a mortgage. Based on that impression, he believed that he was going to be secure. But the note and the project, as described by Mr. Rowe, contemplate that upon refi or sale, which that can only occur if the project is successful, the property is purchased, it's rehabbed, and ultimately sold or refied, the investors are then paid out. And as such, it required success of the project in order for payment to be disbursed. Was Robert privy to that information, to the deal? Yes. Yes. And again, my answer to that is based upon the fact that, again, Mr. Rowe, in the video, in his own words, says, this is how the discussion went with the money that was brought by Scott Stuckel. Or in other words, Mr. Rowe says, this is what I said to Robert Stuckel. And with respect to the instructions, candidly, in any jury trial, counsel has to make strategic decisions. You know, obviously, from a legal perspective, it is acceptable to say, well, we didn't commit fraud. But if we did, the notice was improper and things of that nature. In front of a jury, that's tough to do. Mr. Griffin, who candidly, I like him, developed a good relationship throughout this case, he made certain strategic decisions at this trial. The decision was made not to put in front of the jury, for example, whether the notice was sufficient. No instruction was tendered in that regard. The instruction that was tendered, the issues instruction in this case, that was tendered at the jury instruction conference, made no mention of any of these issues that are now raised in this appeal. The instruction which was proffered by Mr. Griffin at the jury instruction conference, which is in the record at C4470, the only point raised in that instruction that was different than plaintiff's proposed instruction 17, was that Mr. Griffin argued that a finding of liability under the securities law was contingent upon a finding that Mr. Rowe was a salesman under the act and an agent. Judge Barrett ultimately determined that that was not the case. However, most notably, portions of that issue's instruction that were not objected to, to which no alternative instruction was tendered, were, and I'll paraphrase here, that from your consideration, find that plaintiff has proven the foreknowing, plaintiff must also be approved by a preponderance of the evidence to follow, that Scott Rowe was not registered to sell securities, that he offered to sell the security, that he sold or offered to sell the security within the state, which worked, I'm sorry, worked a fraud or tended to work a fraud, and that he employed a device or scheme to defraud, and that he obtained money through the failure or omission of material facts. Those were the issues that the jury was called upon to determine. So, and... Counsel, when did Mr. Rowe receive any money in this transaction? Well, candidly, Judge, that's something that we were trying to figure out throughout the entirety of the case. I can say to you that no direct evidence was presented that Mr. Rowe received any money from this transaction, other than, I would again point to the video that's in the record that indicates that Mr. Rowe was intimately involved in the transaction. His job specifically was to obtain funding. I believe he says in the video that he is the money guy, his joint venture is in private funding, it's his job, he's the person who goes out and gets the money for the project. So, to answer your question, Your Honor, there was no evidence presented at trial directly to show that Mr. Rowe received or pocketed any of this money, but he certainly was involved in the sale dispute. If Mr. Rowe is an agent of AC-1, which seems to have been conceded at trial, then why doesn't that settlement and the releases in that settlement preclude recovery in this case? Well, a few things on that, Your Honor. First, I would not say that his acting as an agent was conceded at trial. In fact, are you disputing he was an agent for purposes of our discussion? Well, Your Honor, to a certain extent, yes. I mean, he was ultimately the person who was in charge of obtaining funds for this project. I think that he certainly, under the statute, was a person who made a material misrepresentation. Let me interrupt in the interest of time to change my question. Assuming, for the sake of argument, that he was an agent, answer my question. Understood. Well, a few things on that. First, as I mentioned in the brief, that was not pled as an affirmative defense. No instruction was tendered to the jury to that issue. And a party cannot fail to tender an instruction on something like that, simultaneously say the verdict was wrong. That's number one. Number two, I would also point out that the evidence in this case does show that a finder, in fact, could find that Mr. Rowe wasn't necessarily acting as an agent of AC-1. And therefore, I think that the verdict is supported by the evidence that was presented at trial. And one thing I did want to touch on, excuse me, was with respect to the sufficiency of the notice of the complaint. Mr. Griffin, in his argument in his brief, has proffered to the court that, and requested the court to adopt the analysis that was undertaken by the federal district court in Endo v. Albertine. That case, frankly, obviously, in addition to the fact that it's not binding, was decided prior to on Jacks v. Schneider securities, which is a Seventh Circuit case that's also cited in the briefs as well. The reason why I bring that up is because, first and foremost, Norville v. Alton Big Top, while it references in the case that the complaint did have an express request for rescission in the complaint, it does not stand for the proposition that that is, therefore, a requirement. In other words, the court in Norville stated that the complaint, with sufficiently specific allegations, the complaint can serve as a notice. The court then noted in that particular case, the complaint did specifically seek rescission. However, the Seventh Circuit and Jacks, the issue in Jacks was that an individual had tendered a handwritten note saying that I want my money back. In essence, in Jacks, what the court did is they did not look at that and simply say, well, it doesn't seek rescission, therefore, it's not sufficient. The court went into a detailed analysis stating that the request did not cite to Illinois law in any way, shape, or form, and it did not cite to the securities law. Here, the complaint did. The complaint specifically alleged securities fraud. It specifically cited to Section 13 of the Act. The only remedy available under Section 13 of the Act is rescission, and based on that, the complaint was sufficient notice. The only other thing that I would say with respect to this argument that the settlement agreement does not, or releases, I apologize, the settlement agreement, therefore, avoids the issue of tender, which was also brought up in the briefs. In other words, they argued that because we settled, we could not tender. I did want to touch on that briefly. I would also point out that that argument was not made in the court below. It was not made in their initial brief, and in any event, Section 13A2 of the Securities Act was added after the Toby case, which is cited by Mr. Rowe, and Section A2 specifically provides that if the party receives consideration for the security, then rather than tendering the security according to purchaser, no longer owns the securities, then they are entitled to the amount set forth in the rescission clause less than the amount received. With respect to the settlement at issue in this case, if anything, Mr. Rowe was entitled to, and I apologize, I see my time is up. Thank you very much. Mr. Rowe was entitled to a credit, potentially, for the settlement received. However, again, given the paternalistic nature of the act, that's a proper reading. However, likewise, an instruction was not tendered on that point as well. Thank you. Counsel, you had cited C4470 as an issued instruction, but you also talked about a tendered instruction by the defense, or at least discussed. Do you have a claim for that? I do. Plaintiff's tendered instruction is located at 4475. The tendered instruction by defendant is located at 4470, and the instruction actually given to jury is located at 4425. Thank you. All right. Thank you, Mr. Smith. Thank you. Mr. Griffin, rebuttal. Thank you. To address the arguments relating to jury instructions, the claims on appeal we're making here, none of them involve any issue of disputed fact. We are arguing what the terms of the note say based upon the face of the note itself, based upon Mr. Stuckel's own testimony, and based upon what the interpretation of that is under Illinois law. So to have said, to have made a jury instruction to the jury to make findings as to whether this note was a security would have been clearly improper. It's within the province of the court, and so no jury instruction would have been proper. Additionally, the claims, the arguments we've made relating to the sufficiency of the notice, the 13B notice, again, there's no disputed issues of fact. We did raise this in our motion for a directed verdict at the close of the plaintiff's case, saying that the plaintiffs failed to show the required notice under the statute. And the circuit court denied that, but again, that was based upon undisputed facts. Mr. Stuckel's testimony that he did not send a notice out, he never sent any notice out, and our argument that the complaint itself, which would have to be reviewed by the court, not a jury, did not sufficiently qualify as a 513B notice. Let me add, another matter with that 513B notice is it has to be done within six months of the party learning that they can rescind the transaction. And the courts have applied that. It's not a statute of limitation. It's a prerequisite to be able to obtain relief. And here, Mr. Stuckel never provided any evidence of when this six-month period began running. So even if the court were to accept the complaint as a substitute for the notice, which we believe should not be, you then go backwards for six months and try to determine, was this a timely notice? And there's no evidence of when the plaintiff learned that the transaction could be voidable. So there's no way you can, we believe there's no way the court could determine compliance with that requirement since there's no date. As far as the, there's question whether there was a jury instruction on the release that was argued. Here, what we've relied upon, and there also was no affirmative defense, that Justice asked about. But we've relied upon, you know, Keefe versus Greenwald, this is in our reply brief, where it says that once the defendant has established the release as a prima facie defense or after admission by the opposing party. And here, the settlement agreement was entered into evidence at the trial, and it was admitted to by Mr. Stuckel that he entered into this agreement. We viewed that as an admission that that settlement agreement had been entered into. And therefore, there was no necessity for us to raise that as affirmative defense. And based upon the fact that the plaintiff's theory, being Mr. Rowe was an agent of AC-1, that that release was sufficient to cover him. Thank you. All right. The court thanks both sides for spirited arguments. We will take the matter under advisement and issue a decision in due course.